IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In re GLADYS YELVERTON, *et al.*, ) | |
| ) | BK CASE NO. 06-10664-DHW |
| Debtors. ) | |
| ) | |
| _____ | |
| ARMY AVIATION CENTER ) | |
| FEDERAL CREDIT UNION, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | CASE NO. 1:07-cv-329-MEF |
| ) | |
| GLADYS YELVERTON, *et al.*, ) | (WO - DO NOT PUBLISH) |
| ) | |
| Appellees. ) | |

**MEMORANDUM OPINION AND ORDER**

In this action, Army Aviation Center Federal Credit Union ("the Credit Union") appeals the Bankruptcy Court's decision sustaining Debtors Gladys and Elijah Yelverton's ("Debtors") objection to a claim asserted by the Credit Union, and overruling the Credit Union's objection to the Debtors' Chapter 13 plan. Specifically, the Credit Union challenges the Bankruptcy Court's determination that a future advance provision in the Debtors' contract was insufficient to secure the Credit Union's claim with Debtors' vehicle. After carefully reviewing the parties' submissions, the Court finds, for the reasons set forth below, that the Bankruptcy Court's order is due to be AFFIRMED.

**I. STANDARD OF REVIEW**

District courts function as appellate courts in reviewing the decisions of bankruptcy

courts. *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990). "Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard." *In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir. 1992). "In contrast to the deference given to factual findings, this court examines the bankruptcy court's legal conclusions de novo." *In re Terry Mfg. Co., Inc.*, 332 B.R. 630, 632 (M.D. Ala. 2005). In performing this review, district courts do not have the ability to make independent findings of fact. *Sublett*, 895 F.2d at 1384. "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court must remand the case to the bankruptcy court for the necessary factual determination." *Id*. (quoting *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987)).

## II.  JURISDICTION

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).

## III.  FACTS AND PROCEDURAL HISTORY

While Debtor-Appellees did not file a brief in this case, based upon this Court's reading of the Credit Union's Appellant Brief, and the Memorandum Opinion issued by the Bankruptcy Court that is the subject of this appeal, it does not appear that any relevant facts are in dispute.

On March 31, 2000, Gladys Yelverton signed an "Xpress Permanent Loan Agreement" ("March 2000 Agreement") with the Credit Union. This agreement established a account with the Credit Union, through which Ms. Yelverton could receive "sub-account"

loans. The first loan under this agreement was made in March 2000, and was unsecured. On the date that Ms. Yelverton filed for bankruptcy, the balance due on this loan was $4,528.94.

On July 7, 2000, Gladys Yelverton entered into a second "Xpress Permanent Loan Agreement"("July 2000 Agreement") with the Credit Union. However, under the July 2000 Agreement, Clifton Yelverton and E.J. Yelverton also signed the agreement as joint borrowers. Under this agreement, Ms. Yelverton took out an auto loan by applying for a sub-account using an "Xpress Loan Advance Application," which was secured by a 2000 Isuzu Rodeo LS. On the date of bankruptcy, $1,744.74 was owed on the July 2000 Agreement. However, since that time the loan has been fully paid.

In addition to creating a security interest in the automobile, the July 2000 Agreement provided the following future advance clause under the heading "Coverage of the Security Interest":

> The Security interest secures the advance and any extensions, renewals or refinancing of the advance. It also secures any other advances you may have now or may receive in the future under the Xpress Permanent Loan Agreement, as well as, any other amounts you owe the Credit Union for any reason now or in the future, unless disclosed otherwise on a Security agreement or the Security is your principle place of dwelling. If any Security is household goods as defined by the Credit Practices Rule, that property will secure only the advance made to purchase that property and not other amounts you owe.

Furthermore, the July 2000 Agreement provides under the heading "Security":

> When you repay any sub-account for which a security interest has been given, the security interest will be cancelled; except that if you are then in default on any other sub-account, we will maintain all security under this Agreement until you are no longer in default.

Despite the fact that the July 2000 Agreement has been paid in full, the Credit Union refused to release the title to the vehicle securing the debt based on the argument that the vehicle also secured the March 2000 loan through the future advance clause quoted above.

Both Debtors and the Credit Union filed objections in the Bankruptcy Court that concerned the validity of the future advance clause and whether the 2000 Isuzu could secure the March 2000 loan. In a Memorandum Opinion dated March 19, 2007, the Bankruptcy Court ruled that the law of Alabama only recognized future advance clauses if all of the agreements at issue are between "the same parties." The Bankruptcy Court held that because the March 2000 loan was between the Credit Union and Gladys Yelverton, while the July 2000 loan was between the Credit Union and Gladys, Clifton, and E.J. Yelverton as co-makers, the two agreements were not between the same parties and the future advance clause in the July 2000 loan could not operate to secure the March 2000 loan.

## IV. DISCUSSION

In a bankruptcy proceeding, the scope of the debtor's rights to property, including ownership and security interests, are determined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979). Accordingly, in order to resolve the enforceability of the future advance clause in this case, this Court must look to the law of the State of Alabama.

Future advance clauses are enforceable in the State of Alabama. *See Ex parte Chandler*, 477 So. 2d 360, 362 (Ala. 1985). In Alabama, a future advance clause establishes a security interest for a pre-existing or future indebtedness other than the one created by the

agreement itself. *See id.* However, a future advance clause is only enforceable when they extend security to cover debt that is "between the same parties." *See id.* Whether other debts between the same parties are secured under a future advance clause depends on the intention of the parties. *See id.* at 363. In order to be enforceable, a future advance clause must be clear and unambiguous. *See id.*; *Malkove v. First Nat'l Bank of Mobile*, 326 So. 2d 108, 111 (Ala. 1976) ("If a debtor owes several notes, and gives a mortgage expressly securing one, any intention to cover other existing notes should be quite clear and explicit." (quoting *First Nat'l Bank v. Bain*, 188 So. 64, 67 (Ala. 1939))).

The Alabama Supreme Court has addressed future advance clauses a number of times. In *First Nat'l Bank of Guntersville v. Bain*, 188 So. 64 (Ala. 1939), the debtor, Bain, received a loan of $7,500 secured by a mortgage on March 5, 1925. The agreement Bain signed contained a consideration clause that stated "and to secure the payment of [the $7,500], and any other indebtedness owing by the said W. N. Bain to the grantee before the full payment of this mortgage." *Id.* at 65. The issue in *Bain* was whether this future advance clause in the mortgage was sufficient to secure two other debts not specifically identified by the agreement.

The first such debt was made up of notes of Ewing Grizzell, endorsed by Bain, which Bain took up by his own note on March 1, 1928, totaling $6,179.95. The second debt was made up of notes of Bessie A. Bain, endorsed by Bain, which Bain also took up by his own note on March 1, 1928, totaling $5,215.30. *See id.*

5

The Supreme Court of Alabama held that the future advance clause was valid and that all of Bain's debts were secured by the mortgage, including the two debts Bain took up on March 1, 1928. In so doing, the court pointed to the consideration clause quoted above, as well as the defeasance clause, which read:

> Upon condition, however that upon the payment of the indebtedness hereby secured, this conveyance to be void, payment of taxes and insurance, the satisfaction of prior incumbrances and other loans and advances to the mortgagor by the mortgagee before the full settlement and payment of this mortgage and all expenses of recording are to be a part of this mortgage indebtedness.

*Id.* at 66. A defeasance clause is a clause that sets forth the conditions that will terminate the security interest. *See id.* The *Bain* court held that the consideration clause and the defeasance clause must be construed together to determine whether the agreement is "clear and unambiguous" as to what debt is secured. In *Bain*, the court held that once Bain ceased to be merely an endorser of the other debts by taking them up with his own notes, those debts became his debts and the mortgage agreement was clear and unambiguous that it also served to secure those debts as well. *See id.* at 67.

In *Malkove v. First Nat'l Bank of Mobile*, 326 So. 2d 108 (Ala. 1976), the court held that a future advance clause in a mortgage contract did not secure debts incurred after the mortgage was executed. *See id.* at 194. In *Malkove*, the future advance clause read:

> In addition to the aforesaid indebtedness and any and all extensions or renewals of the same or any part thereof, this instrument is intended to *and does secure any and all debts, obligations, or liability direct or contingent, of mortgagor to mortgagee, whether now existing or hereafter arising* at any time before actual cancellation of this mortgage.

6

*Id.* (emphasis added).  However, the court noted that the defeasance clause read:

> [I]f the mortgagor shall well and truly pay to the mortgagee *the said sum of $3,500.00* with interest thereon according to the tenor and effect of that certain waiver of exemption promissory note bearing even date and payable as follows: . . . said note being payable to the mortgagee at The First National Bank of Mobile, in Mobile, Alabama; and if the mortgagor shall perform all the covenants and agreements herein contained, then these presents shall be void; otherwise they shall remain in full force and effect.

*Id.* (emphasis added).  Thus, the defeasance clause stated that the bank's security interest would terminate upon payment of the $3,500.00 that was being loaned to him by the agreement.  The court emphasized that the defeasance clause made no mention of any other debts that must be paid before the security interest would terminate, unlike the defeasance clause in *Bain* which required payment of "the indebtedness hereby secured" before the security interest would terminate.  *See id.* at  195.  The court therefore found that the defeasance clause controlled and precluded any debt other than the $3,500.00 being secured under the mortgage.  *See id.*

In *Underwood v. Jarvis*, 358 So. 2d 731 (Ala. 1978), the defeasance clause read "Upon condition, however, that if *said note shall be paid in full* according to its tenor, together with all costs, this conveyance shall become null and void."  *See id.* at 735.  The court found that this clause, which referred to "said note," was no different than the defeasance clause in *Malkove*, which referred to "the $3,500."  *See id.*  The court therefore held that the agreement did not secure any other debt.  *See id.*

In this case, the question presented is whether the future advance clause contained in

the July 2000 agreement secures the March 2000 debt.  The Bankruptcy Court below held that it did not because the July 2000 agreement and the March 2000 agreement were not "between the same parties" as required under Alabama law to enforce a future advance clause.  This Court need not address that issue because the July 2000 agreement does not clearly and unambiguously manifest an intent to secure the March 2000 debt.

> The future advance clause in the July 2000 agreement reads:
>
> The Security interest secures the advance and any extensions, renewals or refinancing of the advance.  It also secures any other advances you may have now or may receive in the future under the Xpress Permanent Loan Agreement, as well as, any other amounts you owe the Credit Union for any reason now or in the future.

The defeasance clause in the July 2000 agreement reads:

> When you repay any sub-account for which a security interest has been given, the security interest will be cancelled; *except that if you are then in default on any other sub-account, we will maintain all security under this Agreement until you are no longer in default*.

(emphasis added).  Reading these two clauses together as required by Alabama law, this Court does not find them clear and unambiguous.  *See Underwood*, 358 So. 2d at 735.  Here, the question is the meaning in the defeasance clause of "any other sub-account."  If it means any other sub-account under this Agreement, then the March 2000 debt would be excluded because it was executed under a separate Permanent Loan Agreement.  However, if it means any other sub-account under any Agreement between "you" and the Credit Union, then it would include the March 2000 debt.  What is apparent is that this language is not "clear and unambiguous" because either definition could readily apply, particularly when the very next

8

clause of the sentence reads "we will maintain all security *under this Agreement* until you are no longer in default." (emphasis added).

Because an agreement cannot secure other pre-existing or future debt outside the agreement itself without manifesting a clear and unambiguous intent to do so, this Court finds that the July 2000 agreement did not secure the debt created by the March 2000 agreement.

## V. CONCLUSION

For the reasons discussed above, the Bankruptcy Court's ruling is AFFIRMED.

DONE this 25th day of March, 2008.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE